## DODSON *v*. STATE.

[93 South. 579, No. 22519.]

1. LARCENY. *Rule as to consolidation of several petty larcenies so as to constitute grand larceny stated.*

 Several petty larcenies cannot be consolidated so as to constitute grand larceny, but where several takings constitute one continuous transaction, the thief may be convicted of the final carrying away, and, if the value of the whole be-sufficient, it is grand larceny.

2. CRIMINAL LAW. *Defendant's admission that the several takings constituted one continuous transaction held to justify a verdict of grand larceny.*

 Where defendant, as a witness in his own behalf, admits that the several takings constitute one continuous transaction, being all the direct evidence to that effect in the case, and there is evidence to show that the value of the aggregate of the takings was twenty-five dollars or more, this is sufficient to justify a verdict of grand larceny, provided there is sufficient evidence of the other essentials of the crime.

APPEAL from circuit court of Claiborne county.

HON. E. L. BRIEN, Judge.

J. W. Dodson was convicted of grand larceny, and he appeals. Affirmed.

*R. B. Anderson,* for appellant.

Appellant asked the court to instruct the jury that defendant could not be convicted of grand larceny. This request was based on the theory that the taking and selling of posts to Arthur Moore and to Walton and Morehead, all at different times, and all in small quantities, could amount to nothing more than a series of petit thefts, admitting that the state's testimony was all true. The testimony shows that the man could carry not more than sixteen to thirty-five posts at a load, and that the posts were only worth fourteen to fifteen cents each delivered at the station. It follows, therefore, that he took only three or four dollars worth of property at one time. It is respectfully submitted that separate and distinct larcenies cannot be harnessed together so as to make them amount to one transaction. A fair and reasonable interpretation of the evidence merely shows that it was impossible for defendant to have delivered more than thirty-five of the posts to any one of these people at the same time. And there is no testimony at all from which it can be inferred or was proved that the asportations were the result of one single purpose or design. *Scarver* v. *State,* 53 Miss. 407.

Our own court has already passed on this identical proposition. Besides, it seems to be the universal rule of law. Here, we submit, there is no proof at all of any one impulse, plan or design to steal enough posts to form the crime of grand larceny; and certainly, if a series of crimes can be so connected and pieced together as to form a felony, the burden of proving the propriety of connecting them would be upon the state. See, also, *Camp* v. *State,*

124 Pac. 331; *Johnson* v. *State,* 122 S. W., 877; *Ex Parte Jones,* 46 Mont. 122.

Instructions 3 and 4 which were refused are as follows:

"3. The court instructs the jury for defendant that you cannot consider the testimony of Ben Mayes in arriving at your verdict so far as such testimony referred to the sale to said Mayes of standing trees."

"4. The court instructs the jury for defendant that you will not consider in arriving at your verdict testimony offered by the state as to cutting of the posts which were sold."

The vice of refusing the first of the above instructions was that Mayes, the state's witness, testified that he bought some standing trees of defendant. This was not larceny surely. Mayes said in the plainest language that he bought "stumpage" and cut and hauled the posts himself. The impropriety and error existing in the refusal of the charge above marked 4, lies in the fact that it shut out the theory of defendant that he did cut and have cut posts for repairing the fences on the Sunnyside place. It was abundantly proved that he did cut posts for the plantation purposes. This was shown by T. R. Turner, chief witness for the state, who said he found one hundred posts on the place after Dodson left; also by state witness, J. D. Terrell.

Finally, the state was permitted, over objection and motion to exclude, to prove many different transactions and alleged crimes. Surely, it was not competent to prove sales of posts to Arthur Moore, Walton, Morehead and Ben Mayes, four separate and distinct acts. If it was competent to do this, then could appellant be prosecuted on all of them under the same indictment? It is rare that it is ever competent to show other criminal acts in prosecutions.

A full discussion of this principle is found in the case of *King* v. *State,* 6 So. 188. To quote from the opinion: "When there are several offenses, for either of which the accused may be convicted under the indictment, the prosecution should elect the offense which it will pursue, and

the testimony would be confined to that offense, unless the case is within some of the exceptions which render the proof of other distinct offenses admissible. After one offense is proved, the prosecution should not have the liberty of the wind, to blow where it listeth. The authorities are not harmonious as to when the prosecution will be required to make election in such cases, or as to how long a prosecuting officer will be permitted to fish with his witnesses before electing the offense for which he will ask conviction, but it is believed that justice is best promoted by allowing the testimony for the prosecution to go far enough to identify one offense, and when this is done, to restrict the evidence to that offense." Quoting 1 Bish. Crim. Proc., 462; Wharton Crim. Ev., 104; See, also, *Ward* v. *State,* 43 So. 466.

*C. E. Dorroh,* assistant attorney-general, for the state.

I think that the view taken by appellee here in the transaction between appellant and Mr. Moore is contained in the case of *Scarver* v. *State,* 53 Miss. 407, which is cited by appellant. In the case it was held that where there is one continuing transaction the thief may be convicted of the final carrying away, although there may have been several distinct asportations in the view of the law; but where there are successive larcenies, which are complete and distinct, and not constituting one continuing transaction, the mere retention and possession by the thief of the fruits of his petty larcenies does not make him guilty of grand larceny.

Appellee takes the view that the cutting and selling of these posts constituted one continuing transaction, and especially does appellee contend that this is the case in the transaction which took place between appellant and Mr. Moore, being the delivery of three hundred posts computed to be worth approximately forty-five dollars. Appellant was not lawfully in the possession of the property and the conversion of same constituted larceny, and appellee insists that the cutting and selling of these posts without the knowledge or consent of the owners thereof con-

stituted a continuing transaction, and the consummation of the deal constituted the final asportation, which constitutes larceny.

ANDERSON, J., delivered the opinion of the court.

Appellant, J. W. Dodson, was indicted and convicted in the circuit court of Claiborne county of grand larceny, and sentenced· to the penitentiary for three years, from which judgment he prosecutes this appeal.

The larceny of which appellant was convicted consisted of the stealing by him from the Natchez Dressed Beef Company, a corporation, of two thousand three hundred cedar and locust fence posts of the value of about three hundred dollars. The Natchez Dressed Beef Company owned Sunnyside Plantation in Claiborne county, consisting of about four hundred acres, which it used for pasturing its cattle. Appellant leased it for the years 1919 and 1920. One Turner was the manager of this plantation for the Natchez Dressed Beef Company. The state proved and the appellant, who testified in his own behalf, admitted that during the winter of 1919-1920 appellant cut and removed from the said plantation and sold to several different persons about two thousand three hundred locust and cedar posts, the proceeds of which he appropriated to his own use.

There is a material difference in the testimony of Turner, the manager for the Natchez Dressed Beef Company, and the appellant, as to the terms of the lease. Turner testified that during the two years for which the place was leased appellant was to have it free of rent except he was to care for it and keep it in repair. Appellant, on the other hand, testified that he built two rooms and a porch to the residence on the place and covered the same, and built about one mile of wire fence, which was worth about six hundred, and that Turner, as manager for the dressed beef company, recognizing the necessity and value of such improvements, agreed for appellant to cut from the place and sell a sufficient number of fence posts to re-

pay himself for such improvement. In other words, appellant claimed that the cutting and removal and appropriation of the timber to his own use was under a *bona-fide* claim of right. Turner in his testimony denied any such agreement, and stated that whatever improvements appellant made on the place was made alone for the benefit that might accrue to him during the period of his lease. The evidence for both the state and the appellant showed that the posts in question were cut and hauled to Engleside, a railroad station about five miles distant from the Sunnyside plantation, that they were sold to several different parties, and delivered at said railroad station in wagonloads of not more than forty posts, and that fifteen cents a post was the maximum value, and that therefore each load cut and delivered would not exceed in value the sum of seven dollars.

The assignment of error most strongly urged and with a good deal of show of reason is that the trial court erred in refusing to grant an instruction asked by appellant directing the jury to acquit appellant of the charge of grand larceny.

Appellant contends that this case comes within the principle announced in *Scarver* v. *State,* 53 Miss. 407. It was held in that case that several successive petty larcenies could not be consolidated so as to constitute grand larceny. It is contended that in the case at bar each wagonload removal and delivery of the posts in question constituted a separate and distinct asportation, and the value of each load being less than the sum of twenty-five dollars, at most the state only showed that appellant was guilty of several petty larcenies. The principle declared in *Scarver* v. *State, supra,* was reaffirmed in *Autman* v. *State,* 126 Miss. 629, 89 So. 265. It was said, however, in Scarver's Case that where successive takings are shown to have been one continuous transaction, the thief may be convicted of the final carrying away, and if the value be sufficient it is grand larceny.

The question is whether the cutting and removal and sale of these fence posts in wagonloads of less value than twenty-five dollars amounted to so many petty larcenies, or was from beginning to end the result of one design, or, as said in the Scarver Case, amounted to one continuing transaction. We think the evidence tended to show that it was the result of one design, or constituted one continuing transaction, and was sufficient to justify the verdict of the jury in finding the appellant guilty of grand larceny. It is true the direct evidence for the state is silent on this question; there is only whatever inference of fact which may be reasonably drawn therefrom. But the evidence of the defendant himself, as witness in his own behalf, supplied the necessary direct proof that the cutting and removal of this timber was one continuing transaction. For the appellant admitted as much when he stated that he had, by virtue of an agreement with Turner, cut and removed and sold these posts and appropriated the proceeds to his own use for the purpose of reimbursing himself for the improvements made by him on the plantation referred to. It is true he undertakes to show that he did it under a *bona-fide* claim of right, but the jury, if they saw fit, from the evidence in the case, had a right to believe his evidence in part and reject it in part, and therefore the jury were justified from the evidence in finding that appellant told the truth when he testified that the cutting and removal and sale of the posts was the result of one design and constituted one continuing transaction, and that he testified falsely when he stated that it was done under a claim of right.

The testimony of Mayes should have been excluded as wholly immaterial, but it was harmless to appellant.

We find no merit in the other assignments of error.

*Affirmed.*