GODFREY *et al. v.* STATE.

(Division B. March 13, 1939.)

[187 So. 199. No. 33591.]

**Sandy R. King,** of Durant, for appellants.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

K. C. Godfrey and Clarence Williams were indicted in the circuit court of Holmes county for the murder of Morgan McLellan, and placed upon trial, K. C. Godfrey being convicted of murder and sentenced to life imprisonment, while Clarence Williams was convicted of manslaughter and sentenced to serve a term of five years in the state penitentiary at hard labor; from which judgments this appeal has been prosecuted.

The killing occurred at the home of Sallie Riley, who was giving some kind of social entertainment or dance. The deceased and two of his brothers came to the home of Sallie Riley, to attend the dance, and on arriving found that she was charging each person the sum of 5

cents to pay for the music for the occasion, which was furnished by K. C. Godfrey on his guitar. The deceased and his brothers did not know of this charge before their arrival, and did not have the small amount required. Sallie Riley, testifying as a witness, said that she requested Godfrey to play a piece, thinking that after he had done so they would pay the small amount intended to compensate him. But when Godfrey had complied with the request, and she asked Morgan McLellan and his brothers what they were going to do about it, they replied by using obscene language; whereupon she requested them to leave. She testified that they walked out on the porch of her house, continuing to misbehave; and when Clarence Williams undertook to close the door as she directed, he was assaulted by Morgan McLellan and his brothers, and struck with a brickbat or bottle—the proof as to which of these is conflicting. In the scuffle the McLellans backed Williams through the house and into the dining room, at the rear, where they were assaulting him when K. C. Godfrey entered the fray. Sallie Riley testified that Godfrey did not use a weapon in the fight with the McLellans, while other witnesses testified that he used a knife. In the affray the deceased was cut on the neck, almost severing his head from his body, and he soon expired from the wound. There was proof for the state that Godfrey did the cutting with a knife which some of the witnesses claimed to have seen; and that thereafter Godfrey stated that he had "gotten one of them"—referring to the deceased—using an opprobrious epithet, indicating malice.

There was other testimony, including that of Godfrey and Clarence Williams, to the effect that Godfrey did not use a knife, and did not have or own one at the time. Williams testified in his own defense that he did the cutting, but in self-defense, because they were assaulting him, being three to one; and that Godfrey attempted to pull his assailants off of him.

After the killing Williams left the neighborhood, and

was located in a county in the Delta, and brought back for trial.

The proof was conflicting, and it was for the jury to say, on the proof submitted, who did the cutting, and whether or not there was such a situation, as to either of the defendants, as would warrant a conviction for murder, or of manslaughter, or whether the killing was justifiable. It is argued here that there was an unwarranted attack upon the testimony of Sallie Riley, at whose home the killing occurred, by reason of the state asking her if she did not live with Buddy Ricks or Buddy Ricks with her. The argument being that the questions asked and objected to indicated to the jury that Sallie Riley was unlawfully cohabiting with Buddy Ricks. It does not appear to us that the question propounded would necessarily or even probably tend to show a want of character or veracity on the part of Sallie Riley. But the question tended to show that Buddy Ricks was related to the defendants, K. C. Godfrey and Clarence Williams, and was therefore interested in the case, and that he had probably tried to talk to, or consult with, the witness. Nothing in the question indicated that there was an unlawful or emotional relation. It was intended, we think, to indicate an interest or bias on the part of the witness, Sallie Riley, who was related to the deceased, which would account for her testimony being contrary to that on behalf of the state. It is, of course, well settled that the veracity of a witness cannot be impeached by proof of unchastity but such relations may, in proper cases, be shown where they would indicate a bias or interest on the part of the witness, or tend to indicate such a probability; because the interest of a witness is a material consideration for the jury in weighing the testimony, and determining its value. Such inquiry should be cautiously and prudently made, because as a rule such questions are foreign to the issue being decided.

We have examined the other assignments of error, and we find no reversible error in the case. The defendant

Godfrey was the uncle of the defendant Williams, and whether he was guilty of murder or manslaughter, or whether he was innocent, were questions for the jury.

The judgment is affirmed.

Affirmed.