MOFFETT *v.* STATE.

No. 39522 February 28, 1955 78 So. 2d 142

*Melvin, Melvin & Melvin,* Laurel, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

Kyle, J.

Appellant, Harvey Moffett, was indicted, tried and convicted at the February 1954 term of the Circuit Court of the Second Judicial District of Jasper County on a charge of assault and battery upon Annie Tatum with a stick, having at the time in his possession a pistol, with intent to intimidate the said Annie Tatum and prevent her from defending herself.

The appellant's attorneys argue four points as ground for reversal on this appeal: (1) That the State failed to prove the venue of the crime charged; (2) that the court erred in refusing to allow the appellant to introduce certain evidence tending to show improper relations between the prosecuting witness and the appellant prior to the date of the alleged assault, for the purpose of impeaching testimony of the prosecuting witness; (3) that the court erred in overruling the appellant's motion to quash the indictment; and (4) that the court erred in refusing to allow the appellant to make a motion for a mistrial because of alleged improper remarks made by the county attorney in his argument before the jury.

First, it is contended that the State failed to prove that the alleged crime was committed in the Second Judicial District of Jasper County. But we think that this contention is not borne out by the record. The alleged beating of Annie Tatum, the prosecuting witness, as testified by her, was administered about 8:00 o'clock at night in Tallahalla Swamp, a few miles northwestwardly from the Town of Bay Springs. Annie Tatum testified that, after she got in the appellant's car at Bay Springs Colored School, he drove the car to Hardell Moffett's house,

which was one and one-half miles west of the school house, and then into the Tallahalla Swamp. She was asked to describe to the jury the place where the car was stopped after they got to the swamp. Her answer was "We crossed a little bridge, crossed one little flat bridge and went on a little road, just pulled right off to the left of the road. * * * He parked the car headed south." She was asked, "How far off the road did he pull?" And her answer was, "He didn't pull over 12 foot."

Sheriff J. E. Pittman, testifying as a witness for the State, was asked the following questions and gave the following answers: "Q. Mr. Pittman, are you familiar with the road leading from the Colored School and the Town of Bay Springs in a northwesterly direction until it crosses Tallahalla Creek? A. Yes, sir. Q. Is there more than one bridge at the crossing of this road and Tallahalla Creek? A. Yes, sir. Q. What are the bridges there? A. I believe all told there is three bridges. * * * There's three bridges, slough bridges. Q. From the slough bridge on, we will say to the actual Tallahalla Creek, both north and south of the road for a distance of 100 yards, and then on for a distance beyond Tallahalla Creek, it would be located in what county? A. You said beyond Tallahalla Creek? Q. Yes, sir. A. That will be in Jasper County on this side of the creek and half-way of the bridge. Q. What bridge are you referring to? A. Tallahalla Creek bridge. Q. All of the distance in between the slough bridge and Tallahalla Bridge is in what county? A. Jasper County. Q. What Judicial District? A. Two. Q. What State? A. Mississippi."

The appellant admitted that he drove from the Bay Springs Colored schoolhouse to Tallahalla Swamp with the prosecuting witness and Tommie Lee Wilson and Ethel Gavin. The appellant was asked on cross-examination, how far it was from the colored schoolhouse to Tallahalla Swamp, and his answer was, "My best judgment would be two or three miles." The appellant's wit-

ness, Tommie Lee Wilson, stated that "We went to Talla-halla Swamp and drove off the side of the road and stopped."

We think that the testimony of the sheriff, along with the testimony of the other witnesses, was sufficient to show that the crime was committed in the Second Judicial District of Jasper County. Phillips et al. v. State, 177 Miss. 370, 171 So. 24; Baggett v. State, 219 Miss. 583, 69 So. 2d 389.

It is next argued that the court erred in refusing to permit the appellant to show by the witnesses, Cleveland Golden and Mattie Sue Bowhandle, that on several occasions prior to the assault complained of the prosecuting witness had visited Cleveland's Big Apple Cafe, in the City of Laurel, in company with the appellant, and had occupied a room there with the appellant for several hours at a time. The evidence was objected to by the State's attorneys on the ground that it had no bearing upon any issue involved in the case and that the evidence was offered for the purpose of prejudicing the minds of the jurors on an immaterial issue; and the court sustained the objection. The appellant argues in support of his contention that the court erred in sustaining the objection to the testimony that there was an attitude of unfriendliness and a feeling of hostility toward the appellant on the part of the prosecuting witness, and that the widest latitude should have been given to the appellant in the cross-examination of the prosecuting witness to show bias and prejudice on the part of the witness toward the appellant, and that the appellant should have been permitted to show by other witnesses that the prosecuting witness had enjoyed a very close relationship with the appellant prior to the date of the alleged assault.

The testimony of Annie Tatum, who was the chief witness for the State, was substantially as follows:

Annie testified that she was a married woman and had two children, and that she resided with her father, Amos

Crosby, on her father's farm approximately six miles northwest of the Town of Bay Springs, in Jasper County; that on the night of February 12, 1954, she, accompanied by her father and one of her children, went to the Bay Springs Colored Schoolhouse to attend a ball game; and while she was sitting in the school building one Tommie Lee Wilson came in and told her that a lady wanted to see her on the outside. She went on the outside of the school building where she found the appellant and Ethel Gavin sitting on the front seat of a car. The appellant told her to get in the car, and she did so. She did not know what the appellant wanted when she went to the car. Tommie Lee Wilson got in the car, and the appellant started the motor and drove away. Annie protested and requested the appellant to stop the car and let her out, but the appellant refused to do so. The appellant drove the car to Tallahalla Swamp. While en route to the swamp, he stopped on the road long enough to permit Ethel Gavin to get on the back seat of the car with Tommie Lee Wilson. When the appellant got to the swamp he drove off the main road on to a side road and stopped. Ethel and Tommie Lee got out of the car and walked a short distance to the rear of the car. The appellant then told Annie to get out of the car, and upon her refusal to do so he pulled her out of the car. The appellant demanded that Annie have sexual intercourse with him. She refused to submit to his demands and the appellant then took a stick and commenced beating her. When she attempted to get away from him he pointed a pistol at her and continued to beat her. The appellant broke the first stick beating her and got another stick and continued to beat her. Annie managed to get away from him and fled through the swamp, and as she was running from him the appellant fired his pistol twice. Annie finally reached the home of Pink McDonald, her half brother, and Pink went with her to the schoolhouse. She and her father immediately reported

to the officers what had happened, and a warrant was issued for the appellant's arrest. Annie then went to the clinic of Dr. W. C. Simmons at Bay Springs for medical treatment.

The doctor testified that Annie arrived at the clinic about 10:30 p. m. The doctor examined her and found large areas of bruises on both arms, particularly the left arm, and on the side of the neck, and on both legs from her hips down. Her legs were scratched and cut. There were large areas of bluish-black spots on her arms and legs where the wounds were, between 15 and 25 such spots. Annie was very nervous and upset. Her injuries and nervous condition made it necessary for her to remain at the clinic until February 17. The doctor stated that in his opinion the injuries had been inflicted by a heavy instrument about the size of the large finger or larger.

If the testimony of Annie Tatum is to be accepted as true, and the jury accepted her testimony as true, it can be readily seen that the appellant had inflicted upon her a brutal whipping with sticks 2½ to 3 feet in length, and that the appellant held a gun on her at least a part of the time while he was whipping her. And Annie's testimony as to the nature of the beating that she had received was corroborated by the testimony of the physician who examined her about two hours later and the testimony of the sheriff who examined her soon after she was admitted to the hospital.

It is not claimed that the testimony of Cleveland Golden and Mattie Sue Bowhandle was competent for the purpose of impeaching the testimony of Annie Tatum on any material fact relevant to the issue being tried. But it is contended that the testimony should have been admitted for the purpose of affecting her credibility as a witness and for the purpose of showing bias or prejudice; and the appellant's attorneys cite several cases in support of their contention, including the case of Motley

v. State, 207 Ala. 640, 93 So. 508, 27 A. L. R. 276. But in that case the Court held that, while a witness may be cross-examined as to illicit relationship with an accused for the purpose of showing bias or prejudice, the details of the illicit relation cannot be inquired into. And as to the right to make such proof by the testimony of other witnesses the Court said: "We do not think such facts, other than declarations of the witness (Fincher v. State, supra), could be shown by other witnesses as independent evidence, because of the confusion and delay that would necessarily result from the injection and trial of a collateral issue of that scope and character."

It is the generally accepted rule that in prosecutions for rape it is permissible for the defendant to show that the prosecutrix had indulged in previous intercourse with him, for the purpose of raising an implication of consent. Such evidence bears directly on the question whether, having yielded once to the sexual embraces of the defendant, she would not be likely to yield again to the same person. 44 Am. Jur. p. 692, par. 93. But such rule does not apply in a case of this kind. The appellant was not being prosecuted for rape or attempt to rape, but for a brutal assault and battery.

The appellant admitted that his purpose in getting Annie in the car with him and going down to the swamp was to have sexual intercourse with her; and the appellant frankly stated that Annie refused to have sexual intercourse with him, and that was the cause of the "scuffle" between them in the swamp. The appellant denied that he had beat Annie or that he had a pistol with him while he was in the swamp. But the appellant admitted that he used force in his attempt to compel her to submit to him. While he was being cross-examined by the district attorney, the appellant was asked the following questions and gave the following answers: "Q. Tell this jury when it was you asked her to submit to you. A. I had her by both arms up against the car. I

pushed her up against the car. Q. I see, still you were a 215 pound, 6 foot 1 man, and you had this woman pushing or shoving her up against the car, and that's when you proposed your proposition to her? That's what you tell the jury? A. Yes, sir, that's right. Q. She told you she wouldn't? A. That's right.''

The facts that the appellant proposed to prove by the testimony of the witnesses, Cleveland Golden and Mattie Bowhandle, if true, had no bearing upon the question of the appellant's guilt or innocence of the charge alleged in the indictment, and we think there was no reversible error in the action of the trial judge in excluding the testimony.

The appellant also contends that the trial judge restricted unduly the appellant's right to cross-examine the prosecuting witness while she was on the witness stand concerning her alleged illicit relations with the appellant prior to the date of the assault. But we think that there is no merit in this contention.

The appellant's attorney cross-examined the prosecuting witness concerning her alleged illicit relations with the appellant, and the witness denied that there had been any such illicit relations between them. The witness was asked whether she had ever been out with the appellant before the night of the assault, or had ever ''dated him,'' and she stated that she had not. She was then asked whether she had ever been with him to Cleveland Golden's place in the City of Laurel, and she stated that she had never been with him to Cleveland Golden's place. It was not until the appellant's attorney asked her the question, ''Annie, isn't it a fact that you have been there and spent the night * * *,'' that the district attorney interposed an objection to the cross-examination; and the court sustained the objection.

This Court has held that although a witness in a case of this kind may be cross-examined as to an illicit relationship with the accused for the purpose of showing

bias or interest on the part of the witness, such inquiry should be cautiously and prudently made, because as a rule such questions are foreign to the issue being tried. Godfrey et al. v. State, 185 Miss. 70, 187 So. 199. The scope of the cross-examination must be determined by the trial judge in reference to the circumstances of the particular case and within the limits of a sound discretion; and the rulings of the trial judge will be upheld in the absence of a clear abuse of this discretion. ■■ When such illicit relationship is shown to exist, ordinarily the details of the relation cannot be inquired into. Motley v. State, supra.

■■ We think that it cannot be said that the trial judge in the case that we have here abused his discretion in refusing to permit the appellant's attorney to question the prosecuting witness as to alleged acts of sexual immorality on her part with the accused at Cleveland Golden's place in the City of Laurel, after she had stated that she had never been to Cleveland Golden's place with the appellant. Further inquiry along that line would have had the effect of injecting into the trial a collateral issue wholly foreign to the issue that the jury had to decide.

It is next argued that the court erred in overruling the appellant's motion to quash the indictment on the ground that the indictment failed to allege the day of the month on which the crime was committed, and on the ground that the indictment was not signed by the foreman of the grand jury. But there is no merit in either of these contentions.

■■ The indictment alleged that the offense was committed on the .......... day of February A.D. 1954. Section 2451, Code of 1942, expressly provides that an indictment ''shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, * * *.'' Time was not of the essence of the offense

charged in the indictment in this case, and the indictment was sufficient, notwithstanding the failure to allege the day of the month on which the crime was committed.

 ██ The appellant also argues that the motion to quash should have been sustained for the reason that the indictment was not signed by the foreman of the grand jury, as required by Section 2441, Code of 1942. But the record shows that M. M. Sims was duly appointed and sworn as foreman of the grand jury; and the name of M. M. Sims was endorsed on the back of the indictment in this case. The indictment was marked "filed" by the Clerk and such entry was dated and signed by the Clerk. We think the statute was sufficiently complied with. Dawsey v. State, 144 Miss. 452, 110 So. 239.

Finally it is contended that the court erred in refusing to allow the appellant to make a motion for a mistrial because of the improper conduct of the county attorney in his argument before the jury.

The special bill of exceptions shows that while the county attorney was arguing the case before the jury, he used the following language: "Gentlemen, this is the act of a brute." Whereupon, the appellant's attorney immediately objected to the county attorney's remark. The court sustained the objection and instructed the jury to disregard the remark. The defendant's attorney then moved the court to excuse the jury, so that a motion for a mistrial could be made. The court refused to excuse the jury for that purpose.

 ██ We think there was no error in the action of the trial judge in refusing to excuse the jury so that a motion for a mistrial could be made. Such motion could have been made in the presence of the jury; and we think there was no abuse of discretion on the part of the trial judge in refusing to excuse the jury to enable the appellant's attorney to make the motion outside the presence of the jury.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.