469 So.2d 1256 (1985)
Charlie ELLIS, Jr.
v.
STATE of Mississippi.
No. 55559.
Supreme Court of Mississippi.
May 22, 1985.
*1257 Stanley N. Merritt, Natchez, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and PRATHER and ANDERSON, JJ.
WALKER, Presiding Justice, for the Court:
Charlie Ellis, Jr. was convicted in the Circuit Court of Jefferson County of grand larceny. Ellis was sentenced as an habitual criminal to life imprisonment without parole. He appeals his conviction and sentence.
On January 1, 1982 the Jessamine Ridge Baptist Church in the Melton Community north of Fayette was broken into and two butane heaters and two collection plates or sacramental plates were taken. The following day two more heaters were discovered missing.
The police were able to recover three of the stolen heaters. In each case, the person who had possession of the heater said that Charlie Ellis had sold it to him. There was testimony from Ernest Bell ("Cool Bear") that he drove Ellis to a spot not far from the Jessamine Ridge Baptist Church and that Ellis retrieved two heaters from some bushes.
Ellis contended that he sold the heaters on behalf of and at the request of Ernest Bell. Ellis' story was contradicted by Bell and by the two purchasers who testified at Ellis' trial.
Appellant's first proposition on appeal is stated:
THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO AMEND ITS INDICTMENT THEREBY PREJUDICING THE APPELLANT.
An indictment was returned against Ellis on April 22, 1983. The indictment contained these words: "That at said time and place the said Charlie Ellis, Jr., was an *1258 habitual criminal as defined in Section 99-19-81 of the Mississippi Code of 1972, Annotated... ."
On the day of the trial, the State, through the assistant district attorney, moved to amend the indictment to reflect that appellant had been indicted under Section 99-19-83 of the Mississippi Code of 1972, Annotated. The amendment was allowed over the objection of appellant's counsel. Appellant's counsel had been previously advised that the State intended to proceed under Section 99-19-83. Appellant was fully aware during plea negotiations that the State was taking this position.
Both statutes concern sentencing as habitual criminals. Section 99-19-81 provided for the maximum sentence under the applicable felony statute without benefit of parole, pardon, or reduction. Section 99-19-83 provides a mandatory sentence of life imprisonment without benefit of parole, pardon or reduction.
In McGuire v. State, 35 Miss. 366, 367 (1858), cited by appellant, this Court said: "It is well stated that the court has no power to amend an indictment, as to matter of substance, without concurrence of the Grand Jury by whom it was bound, though amendments as to mere informalities may be made by the court."
This Court, in this century, has had more to say on amendment of indictments. In Shelby v. State, 246 So.2d 543, 546 (Miss. 1971) the following was said:
It is well settled in this state, as was noted by learned circuit judge, that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case. Mississippi Code 1942 Ann. § 2451 (1956); Byrd v. State, 228 So.2d 874 (Miss. 1969); Moffett v. State, 223 Miss. 276, 78 So.2d 142 (1955); and Archer v. State, 214 Miss. 742, 59 So.2d 339 (1952).
It was not necessary for the State to specify in the indictment which section of the habitual criminal statute they were proceeding under. See Osborne v. State, 404 So.2d 545 (Miss. 1981); Dalgo v. State, 435 So.2d 628 (Miss. 1983). As noted in Osborne, these two statutes are not criminal offenses and only affect sentencing. 404 So.2d at 548.
Although appellant argues prejudice he does not show how or in what way. In view of appellant's counsel's statements that he knew well in advance of the change, the amendment could not have taken the appellant by surprise. No request for a continuance was made. This Court has held that where a defendant does not ask for a continuance when an indictment is amended he cannot later object that he was surprised and prejudiced in his defense. Peebles v. State, 55 Miss. 434 (1877); Sanders v. State, 219 So.2d 913 (Miss. 1969); cert. denied 396 U.S. 913, 90 S.Ct. 228, 24 L.Ed.2d 188.
There was no error in amending the indictment.
Because appellant's second and fourth assignments of error concern these same questions, they will be discussed together. These points were stated as this:
THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE THE STATE'S CASE IN CHIEF BASED UPON THE FAILURE OF THE STATE'S EVIDENCE TO PROVE THAT THE VALUE OF THE ITEMS ALLEGEDLY STOLEN WAS IN EXCESS OF ONE HUNDRED DOLLARS WHICH IS A NECESSARY AND INDISPENSABLE ELEMENT OF THE CRIME OF GRAND LARCENY OF WHICH THE APPELLANT WAS CONVICTED.
THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A NEW TRIAL.
Appellant relies on Barry v. State, 406 So.2d 45 (Miss. 1981) to support his contention that the State's proof was insufficient to prove that the value of the property was in excess of $100.00.
*1259 In Barry a 23-channel CB radio, speakers and antenna was stolen. The owner testified that he paid around $200 for the CB and equipment and that it was worth at least $150 to him. This was the only CB the owner had ever bought or owned. The defense produced the owner of a Western Auto Store, who had bought and sold between 5,000 and 10,000 new and used CB radioes during the preceding 6 1/2 years. He testified that the used 23-channel CB radio in question would sell for between $35 and $40 and the speakers for $12.50. This Court held that the proof was insufficient to prove grand larceny. The Court held that the proper measure of the value of property is the market value of the property at the time and place of the larceny, not the original purchase price.
Deputy Sheriff Bud Williams was asked if he knew the value of the heaters. He answered that the heaters range about $150 to $200 each. He testified that he had purchased a heater three or four years ago and had paid $200 for it.
Johnny Dunbar, Sr., a member of Jessamine Baptist Church, testified that the heaters were worth about $200 each. He also indicated that the heaters were about thirty years old. When questioned further on cross-examination about the value of the stolen property the following was said:
Q. Now, you aren't going to tell me that those heaters were worth two hundred dollars apiece being thirty-years old, are you?
A. I imagine now they would be two hundred dollars, I would say.
Q. Well, two hundred dollars from inflation; do you think that a heater that's been used for thirty years is worth the full value of replacement?
A. Well, as long as it's a good heater I would say it is. You couldn't buy one unless it was, not that for two hundred dollars now. The one we bought was more than, was more than two hundred dollars.
Apart from the testimony of Williams and Dunbar, there was also testimony as to what three of the stolen heaters were sold for. The first heater was sold to Albert Johnson for $35 or $40. The second heater was sold to Johnny Crawford, Jr. for $35. The third heater was sold to Howard Chambliss for $40. This shows that part of the stolen property was worth at least $110.
To counter this argument appellant argues that the proof established two separate takings and that the highest value that can be placed on the property in each taking is $70 or $80 based on the prices they were sold for. He contends that at best only the crime of petit larceny was proven.
Even if we accept that there were two separate crimes, the evidence of the prices that appellant sold the heaters for is not evidence of the true market value. As stated in Barry, the proper criterion is "the price which the subject of the larceny would bring in open market  its `market value' or its `reasonable selling price'". ... 406 So.2d 47 (Emphasis in original). This was not an open, public sale and no testimony was offered by defendant that the price paid for the stolen items was reasonable or otherwise reflected the true value of the property.
Appellant's motion for a new trial was properly denied. The jury could either believe the witnesses that the heaters were worth $200 each as testified to by the State's witnesses Williams and Dunbar or they could believe the defendant that they were worth $35 or $40 each  the amount they were sold for. It is evident from the verdict that they believed Mr. Williams and Mr. Dunbar.
Appellant's third assignment of error is the following:
THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE IN CASE BASED UPON A MATERIAL VARIANCE IN THE STATE'S INDICTMENT AND THE PROOF.
Appellant's argument is a continuation of the one begun under the previous point that the State's indictment was for one *1260 crime where four heaters were taken and the proof was that there were two crimes where four heaters were taken.
Appellant, however, did not base his motion for a directed verdict on this proposition. Rather, appellant's motion was grounded on the failure of the State to prove the value of the property was over $100. Appellant cannot assert on appeal that a variance existed between the indictment and proof where he did not raise this matter in the trial court. Williams v. State, 445 So.2d 798 (Miss. 1984); Bass v. State, 328 So.2d 665 (Miss. 1976); Ellis v. State, 254 So.2d 902 (Miss. 1971); Pieratt v. State, 235 So.2d 923 (Miss. 1970).
Also, appellant waived his motion for a directed verdict made at the close of the State's case-in-chief by introducing evidence in his own behalf. Rainer v. State, 438 So.2d 290 (Miss. 1983); Robinson v. State, 418 So.2d 749 (Miss. 1982).
It is true that several petty larcenies cannot be consolidated so as to constitute grand larceny, but where several takings constitute one continuous transaction it is grand larceny. Dodson v. State, 130 Miss. 137, 93 So. 579 (1922). It is clear from the evidence in this case that the two entries into the church  taking two heaters each time  by the defendant were for the primary purpose of stealing the four heaters which he hid in the woods, picked up at a later date, and sold.
No reversible error being shown by appellant, this case should be and is affirmed.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.