994 So.2d 864 (2008)
Edgar Lee COMMODORE, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01268-COA.
Court of Appeals of Mississippi.
October 28, 2008.
*868 Tony L. Axam, attorney for appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Edgar Lee Commodore, Jr., was tried for and convicted of the crimes of *869 Count I, conspiracy; Count II, burglary of a building other than a dwelling; Count III, attempted grand larceny; and Count V, attempted aggravated assault.[1] For the crime of conspiracy, the Circuit Court of DeSoto County sentenced Commodore to serve five years. For the crime of burglary of a building other than a dwelling, the trial court sentenced Commodore to serve seven years. For the crime of attempted grand larceny, the trial court sentenced Commodore to serve ten years. For the crime of attempted aggravated assault, the trial court imposed a sentence of twenty years. All sentences were to be served in the custody of the Mississippi Department of Corrections and to run concurrently to one another. Commodore was sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). The trial court also ordered Commodore to pay restitution in the amount of $100 to the Crime Victims' Compensation Fund and to pay all court costs.
¶ 2. Commodore appeals, arguing that: (1) the trial court erred in denying his motion for a new trial; (2) a rational trier of fact could not have found his guilty of attempted aggravated assault beyond a reasonable doubt; (3) his Sixth Amendment rights were violated when he received ineffective assistance of counsel; (4) the trial court erred when it allowed the State to amend the indictment to include habitual-offender language; (5) the trial court erred in allowing the amended indictment to stand for sentencing when the State failed to timely file the amended indictment; (6) the trial court erred in allowing testimony as to his intent.
¶ 3. We find that Commodore's issues are without merit. Therefore, we affirm his convictions and sentences.

FACTS AND PROCEDURAL HISTORY
¶ 4. Commodore was convicted of conspiracy, burglary, attempted grand larceny, and attempted aggravated assault. On October 19, 2004, Deborah Hill (Deborah) alerted her husband, Brian Hill (Brian), to suspicious activity occurring at a neighboring house that was under construction at the time. Brian testified that he observed two vehicles backed into the driveway around 11:00 p.m. that evening, but he did not see any people. He instructed his wife to call the police, retrieved his personal gun, and drove his vehicle around to the neighboring house. He then parked his vehicle across the end of the neighboring driveway so as to prevent the other vehicles from exiting. Brian also testified that he pulled his gun on a man later identified as Commodore when Commodore got into the white Yukon and drove directly toward Brian. Brian stated at trial that he "had to push [him]self off of the vehicle to prevent [him]self from being hit and run over."
¶ 5. Roosevelt Hill (Roosevelt) testified at trial that Commodore said he knew how to make some money, and Roosevelt was supposed to act as a lookout while Commodore stole the dishwasher. When Brian arrived on the scene, Roosevelt quickly got into in his gray van and drove away. Roosevelt also stated that when he looked in his rearview mirror he saw Brian trying to dodge Commodore's Yukon.
¶ 6. Brian then got into his vehicle and followed Commodore until he was successfully stopped by Officer Danielle Beith. Beith testified at trial that after placing Commodore in the back of her patrol car, he stated that he had been acting as the lookout for another male, later determined *870 to be Roosevelt. Commodore told Officer Todd Pierce that he and Roosevelt had been planning on stealing a dishwasher from the unoccupied house at which Brian found them. Pierce went to the unoccupied house later than night with Steve Cannon, the owner of the burglarized home. Cannon confirmed that the appliances had been installed in the house, and some were now missing. The dishwasher had been pulled out from the wall and damaged, but it had not been taken from the house.
¶ 7. Commodore maintained at trial that he had been contacted by Roosevelt to visit a house that his aunt was about to buy. Commodore also testified that he had not been acting as a lookout. Instead, he had only just arrived and was walking toward the house when Brian pulled a gun on him. He stated that he was not trying to run Brian over with his vehicle, but only trying to get away quickly because he did not want to be shot. Both Roosevelt and Commodore were arrested and taken into custody.
¶ 8. Commodore was indicted on March 22, 2005, and tried on November 25, 2005. On the morning of trial, the State made a motion to amend the indictment to include habitual-offender language. The trial judge allowed the amendment and entered an order amending the indictment. The jury found Commodore guilty on all counts. On February 21, 2006, Commodore filed a motion for leave to file an out-of-time appeal and an extension to file an appeal. New defense counsel was retained, and a motion for a new trial was filed. The trial court granted Commodore's motion for an out-of-time appeal, denied the motion for a new trial, and reopened the period for appeal. Commodore timely filed his notice of appeal.

LAW AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN DENYING COMMODORE'S MOTION FOR A NEW TRIAL.
¶ 9. A trial court's denial of a motion for a new trial should only be reversed when the reviewing court finds that there was an abuse of discretion. Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999). A motion for a new trial challenges the weight of the evidence, and the appellate court should only "disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The evidence should be viewed in the light most favorable to the prosecution, and the court must ask whether any rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt. Id. at 843(¶ 16).
¶ 10. Commodore contends that the weight of the evidence did not support the jury's finding of guilt in the alleged charges. The State presented evidence from both eyewitnesses and police officers detailing the incidents leading up to Commodore's arrest. Brian, Deborah, and Roosevelt all testified that they observed Commodore leaving the house that night and attempting to run over Brian with a vehicle. Roosevelt testified that he and Commodore discussed ways to get additional money, and Commodore suggested they steal something out of a house to sell. Roosevelt then detailed essentially the same scenario that had been testified to earlier by Brian. Officer Beith and Officer Pierce testified that Commodore admitted to his involvement in the scheme when he was stopped and questioned.
*871 ¶ 11. The weight of the evidence presented at trial, when viewed in the light most favorable to the prosecution, could have led a reasonable trier of fact to find Commodore guilty of conspiracy, burglary, attempted grand larceny, and attempted aggravated assault. Therefore, we find that the verdict was not so contrary to the overwhelming weight of the evidence so as to cause an unconscionable injustice. This issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT A RATIONAL TRIER OF FACT COULD HAVE FOUND COMMODORE GUILTY OF ATTEMPTED AGGRAVATED ASSAULT BEYOND A REASONABLE DOUBT.
¶ 12. The standard of review for overturning the "denial of a motion for judgment notwithstanding the verdict (JNOV) is de novo as to the law applied by the trial court judge as well as the evidence presented during trial." Johnson v. St. Dominics-Jackson Mem'l Hosp., 967 So.2d 20, 22(¶ 3) (Miss.2007). A motion for JNOV challenges the sufficiency of the evidence as opposed to a motion for a new trial which challenges the weight of the evidence. Bush, 895 So.2d at 843-44 (¶¶ 16, 18). The supreme court has stated:
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for . . . judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."
Id. at 843(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Each element must be tested for legal sufficiency to ensure that the State has proven it beyond a reasonable doubt. Edwards v. State, 469 So.2d 68, 70 (Miss.1985). The evidence must be taken in the light most favorable to the State. Id. at 70. If the evidence is of such a nature that "reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions," the motion for JNOV should be denied. Id.
¶ 13. According to Mississippi Code Annotated section 97-3-7(2) (Supp.2007):
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]
The State presented evidence relevant to each of these elements through the testimony of various eyewitnesses that Commodore drove straight toward Brian, despite there being nothing to obstruct Commodore's view. The State also elicited testimony about the existence of an alternate path that Commodore could have taken to avoid coming into such close contact with Brian. While Commodore disputes this testimony and claims that he was trying to escape gunshots fired by Brian, precedent mandates that we consider all evidence presented at trial in favor of the State. Thus, a reasonable juror could find that Commodore had, in fact, intended to cause serious bodily harm to Brian.
¶ 14. Intent must usually be deduced from the actions of the parties and the circumstances surrounding those actions. Harris v. State, 642 So.2d 1325, 1327 (Miss.1994) (quoting Thames v. State, *872 221 Miss. 573, 577, 73 So.2d 134, 136 (1954)). Just because there was no direct proof that Commodore intended to cause serious bodily injury to Brian, the existence of such intent can be logically deduced from Brian's testimony that he feared for his own safety, along with the testimony of Brian, Deborah, and Roosevelt that Commodore appeared to have come straight at Brian with his Yukon. In light of this testimony, we find that a rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State in proving attempted aggravated assault. This issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT COMMODORE RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL IN ACCORDANCE WITH HIS SIXTH AMENDMENT RIGHT.
¶ 15. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) states the test for an ineffective assistance of counsel claim. This two-prong inquiry looks at whether the counsel's performance was deficient and, if so, whether this deficiency prejudiced the defendant. Id. As to the first prong, the errors committed by counsel must have been "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Counsel must only be "reasonably effective." Id. Plus, counsel enjoys a "strong presumption of competence." Mohr v. State, 584 So.2d 426, 430 (Miss.1991).
¶ 16. The second prong of the Strickland test requires a showing of prejudice to the defendant. It must be determined that the errors committed by counsel were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Even if defense counsel's conduct is deemed to be professionally unreasonable, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
¶ 17. Commodore has alleged five specific errors made by his trial attorney. The first is that his defense counsel failed to adequately prepare him for cross-examination at trial. Attorney Sidney F. Beck testified at Commodore's hearing on his motion for a new trial that he had met with Commodore at least twice to discuss his testimony and the potential risks associated with him taking the stand. Beck stated that he had been aware of Commodore's past convictions and had instructed him "not to volunteer any information at all." Beck further testified that he advised Commodore on the possibilities of being sentenced as a habitual offender and being impeached with testimony regarding his prior convictions. Beck also indicated that he had difficulties getting Commodore to cooperate with his own defense, and Commodore frequently failed to show up for scheduled meetings with his attorney.
¶ 18. Commodore testified at the second hearing on his motion for a new trial that Beck did not prepare him for cross-examination or direct examination before his trial. He stated that Beck instructed him to say that he did not steal, and Beck had indicated that he should testify despite Commodore not wanting to take the stand. However, the record indicates that the trial judge explicitly asked Commodore if he understood that the decision to testify was his, and his alone, and Commodore affirmatively answered that he did understand that he had the right to remain silent. Commodore also stated at trial that he had been given the opportunity to thoroughly discuss the decision to testify with his lawyer.
*873 ¶ 19. The trial record indicates the Commodore was prepared for direct and cross-examination at his trial. He was given a full explanation by the trial judge and questioned as to his knowledge regarding his right to testify or to remain silent. Commodore admitted to the judge at his trial that he had discussed these issues with his defense counsel. Therefore, this issue does not constitute ineffective assistance of counsel because there was no unreasonable error on the part of Commodore's defense counsel.
¶ 20. The second error alleged by Commodore is that his defense counsel failed to adequately investigate his case. Defense counsel has to make many complex decisions regarding the presentation of a criminal case to a jury. There is a presumption that many of the decisions that are made by counsel are strategic in nature. Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985) (citing Murray v. Maggio, 736 F.2d 279, 281 (5th Cir.1984)). In order to adequately assess an attorney's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
¶ 21. Commodore alleges that Beck failed to investigate: his prior convictions, Roosevelt for impeachment purposes, relevant phone records between Commodore and Roosevelt, and the State's witnesses for impeachment purposes. Commodore also claims that Beck failed to call witnesses on Commodore's behalf. Beck testified at the hearing on the motion for a new trial that he was aware of the prior offenses and discussed a possible plea agreement that would have kept Commodore from being sentenced as a habitual offender. Beck also claimed that he had spoken with Roosevelt on the phone prior to trial. Beck could not remember if Roosevelt's connection with the unoccupied house had been a part of his cross-examination strategy. Beck did not examine phone records between Commodore and Roosevelt because he did not see the need to do so. Finally, Beck testified that he believed he did a thorough job in representing Commodore. All of the above alleged errors can be considered trial strategy and fall within the wide range of reasonable professional conduct sanctioned by Strickland as effective assistance of counsel.
¶ 22. Even if some of the above actions by Beck did constitute unreasonable error, which we venture to say they do not, Commodore cannot show how this has prejudiced him to the extent that the result at his trial would have been different. Thus, if he did, in fact, meet the first prong of the Strickland test for these challenges, he would fail to pass the second prong.
¶ 23. Commodore also alleges that Beck failed to cross-examine witnesses in order to fully develop the theory of the defense. However, the trial record indicates that Beck cross-examined almost every witness that was called by the State. He made timely objections throughout the State's examination of witnesses. The exact nature of what questions Beck asked, how long he cross-examined each witness, or what objections he made during the State's case-in-chief are all strategic considerations. Strickland warns against second-guessing defense counsel's decisions after an adverse decision. The reasonableness of defense counsel's actions must be "viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. 2052. The above allegations were strategic in nature and none so unreasonable as to overcome the strong presumption *874 that counsel rendered adequate assistance.
¶ 24. Commodore additionally alleges that Beck erred by failing to request a curative instruction following improper testimony that was timely objected to and properly sustained by the trial court. This decision must be viewed as strategic in nature. The jury is presumed to follow the directions of the trial judge. King v. State, 857 So.2d 702, 723-24(¶ 62) (Miss.2003). Beck timely objected to the hearsay testimony by Officer Beith, and the trial judge sustained the objection. Beck then made the strategic decision not to ask for curative instructions. It cannot be questioned why defense counsel made specific trial motions and not others. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
¶ 25. Commodore alleges that Beck did not adequately protect his rights by failing to confer with him regarding the fact that the robbery conviction was the only conviction that would be used for impeachment purposes. Beck testified at the hearing for a new trial that he did in fact discuss the possibility of Commodore testifying and advised him against volunteering any information. Commodore also testified that he understood his rights regarding his choice as to whether he should testify. Commodore claims in his brief that Beck should have conferred with his client when Commodore himself began testifying about his prior aggravated assault and statutory rape charges. However, the Supreme Court has stated that:
when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice.
Perry v. Leeke, 488 U.S. 272, 281, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). In Perry, the Supreme Court discussed why it would be wrong for defense counsel to meet with the defendant between the defendant's direct-examination and cross-examination. This would give the defendant the "opportunity to regroup and regain a poise and sense of strategy." Id. at 282, 109 S.Ct. 594. "Cross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness'[s] testimony at just the right time, in just the right way." Id. When defendants take the stand, they must be treated as other witnesses. Id. at 281, 109 S.Ct. 594. "Once the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testimony on cross-examination." Perry, 488 U.S. at 283, 109 S.Ct. 594 (quoting United States v. DiLapi, 651 F.2d 140, 151 (2d Cir.N.Y.1981) (Mishler, J., concurring)). "[O]nce cross-examination has begun . . . the defendant and his counsel [are] aware of the direction the cross-examination has taken." Puckett v. State, 879 So.2d 920, 956 (¶ 142) (Miss. 2004).
¶ 26. The Perry decision involved a fifteen-minute break between a defendant's direct-examination and the cross-examination. The current case's alleged error came during Commodore's actual cross-examination. Commodore argues that because his attorney did not stop the cross-examination by the State, he was ineffective. However, case law states that a defendant does not have a right to confer with counsel during cross-examination. Case law also holds that if an attorney did try and consult with his client while his client was on the stand, it could be deemed unethical. Therefore, the contention that Beck was ineffective because he did not *875 stop his client from testifying to past crimes while Commodore was on the stand has no basis in the law.
¶ 27. Finally, Commodore claims that the cumulation of the many errors he feels were made by his attorney violated his Sixth Amendment right to receive effective assistance of counsel. It is true that "multiple, individual errors, not reversible in themselves, may have the cumulative effect of denying the defendant a fair and impartial trial, thus warranting a reversal." Hall v. State, 906 So.2d 34, 39(¶ 19) (Miss.Ct.App.2004). However, this is not the situation in Commodore's case. Careful review of the alleged errors show that they are either not factually substantiated through the trial record or were strategic decisions made by defense counsel. Any errors that were made were reasonable, and if any unreasonable errors were made, they were not sufficient enough to change the outcome of the trial. Thus, Commodore does not satisfy either prong of the Strickland test. This issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT IN ORDER TO SENTENCE COMMODORE AS A HABITUAL OFFENDER.
¶ 28. Indictments can only be amended if the proposed additions will change the form of the indictment and not the substance. Reed v. State, 506 So.2d 277, 279 (Miss.1987) (citing Akins v. State, 493 So.2d 1321, 1322 (Miss.1986)). The amendment must not prejudice the defendant. To determine if the amendment is prejudicial, we look at whether a "defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence accused might have would be equally applicable to the indictment or information in the one form as in the other." Id. (quoting Bingham v. State, 434 So.2d 220, 223 (Miss.1983)). If the answer is in the affirmative to both the above inquiries, the amendment is one of form and not of substance. Id.
¶ 29. Uniform Rule of Circuit and County Court 7.09 states that an indictment "may also be amended to charge the defendant as [a] habitual offender . . . only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." It is proper for the trial court to allow the amendment of the indictment in order to charge a defendant as a habitual offender because it does not affect the substance of the charged crime, but only the subsequent sentencing. Adams v. State, 772 So.2d 1010, 1020(¶ 49) (Miss. 2000) (quoting Burrell v. State, 727 So.2d 761, 766(¶ 9) (Miss.Ct.App.1998)).
¶ 30. The State made an oral motion the morning of trial to amend the indictment to charge Commodore as a habitual offender. "[I]t is permissible to amend the indictment on the date of trial and to charge the defendant as a habitual criminal under Mississippi Code Annotated § 99-19-83, when defense counsel is aware of the State's intentions and the defendant is fully aware of the State's intentions during plea negotiations." Forkner v. State, 902 So.2d 615, 624(¶ 28) (Miss.Ct. App.2004) (citing Ellis v. State, 469 So.2d 1256, 1258 (Miss.1985)). During the hearing on the State's oral motion to amend the indictment, it was established that a plea offer had been made by the State which included Commodore not being sentenced as a habitual offender. When Commodore rejected the plea offer the day before trial, it should have been clear to him and his defense counsel that there was a strong possibility the State would move *876 to amend the indictment in order to charge Commodore as a habitual offender.
¶ 31. Commodore was not unfairly surprised by the State's intention to add the habitual offender status to his indictment as the assistant district attorney handling his case indicated that would be the consequence of rejecting the offered plea agreement. Also, the trial judge noted to Commodore's defense counsel that they were "entitled to some time to prepare because the habitual offender was amended  the indictment was amended to include that only yesterday." Thus, defense counsel was allowed extra time to confer with his client before having to present the issue at Commodore's sentencing.
¶ 32. The trial court correctly held that a motion to amend the indictment to include habitual-offender language is one of form and not substance, and an indictment can be amended on the morning of trial to make this type of change. Therefore, this issue has no merit.

V. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE AMENDED INDICTMENT TO STAND DESPITE THE STATE HAVING NEVER FILED A NEW, FORMAL INDICTMENT.
¶ 33. The trial court ruled to allow the State to pursue prosecution of Commodore as a habitual offender, and the court entered an order amending the indictment to reflect that change. The order stated that "[i]n Counts 1, 2, 3, and 5, subsequent to the elements of the offense and preceding the `against the peace and dignity' language, each Count shall have the following language inserted. . . ." The order then details the required information relating to Commodore's past felony convictions for statutory rape, aggravated assault, and possession of marijuana with the intent to sell.
¶ 34. An indictment is proper if it gives notice to the defendant as to which crime or crimes he is being charged with and comports with the formal requirements of Uniform Rule of Circuit and County Court 7.06. Turner v. State, 864 So.2d 288, 293(¶ 22) (Miss.Ct.App.2003) (citing McNeal v. State, 658 So.2d 1345, 1350 (Miss.1995)). The original indictment in Commodore's case was proper. The order amending the indictment clearly stated that the amended indictment would include the habitual-offender language in Counts 1, 2, 3, and 5 after the elements of the offense but before the "against the peace and dignity of the State" language. Thus, the amendment was procedurally proper and comported with the requirements of Uniform Circuit and County Court Rule 7.06. There was no ambiguity as to where this language would be inserted or if its insertion would create a fatal flaw in the original indictment. A new, formal indictment would have provided no additional notice to Commodore or his counsel as to any possible charges or defenses that they were not aware of after the order amending the indictment was filed. Therefore, this issue has no merit.

VI. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED TESTIMONY AS TO COMMODORE'S INTENT.
¶ 35. Commodore claims that the trial judge erred by allowing certain testimony at trial that Commodore claimed went to his intent. The standard of review for the admission of testimony at trial is abuse of discretion. Stringer v. State, 862 So.2d 566, 568(¶ 8) (Miss.Ct.App.2004). A lay witness may testify to matters which are: "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized *877 knowledge." M.R.E. 701. It is true that "Rule 701 does not open the door to any and all opinion testimony." McGowen v. State, 859 So.2d 320, 345(¶ 86) (Miss.2003) (quoting Jackson v. State, 551 So.2d 132, 144-45 (Miss.1989)). A lay witness is not permitted to give opinion testimony as to the ultimate issue being determined in the case. Id.
¶ 36. The trial court did not abuse its discretion in ruling that the testimony of both Brian and Roosevelt was proper testimony at Commodore's trial. The statement by Brian that he "was worried the vehicle was going to come back and try to run over me again" was rationally based upon what Brian had observed that night. Brian had personal knowledge as to what he felt  that Commodore had attempted to run him over and might try again. This statement is allowable under Mississippi Rule of Evidence 701. See Stringer, 862 So.2d at 568(¶ 9).
¶ 37. The second statement challenged by Commodore was also made by Brian. Defense counsel objected to Brian stating that he "wouldn't be sitting here today if [he] wouldn't have moved" out of the way of Commodore's Yukon. The trial court correctly stated that while Brian did not know what would have been the exact nature of his injury, he did have personal knowledge of his feelings on that night. His opinion that he would have been struck and sustained some type of serious injury was rationally based upon his perceptions from that night and central to the determination of whether Commodore had attempted to inflict serious bodily harm with his vehicle.
¶ 38. Commodore's final challenge to lay witness opinion testimony relates to the statement by Roosevelt that he "guessed [Commodore] was trying to run [Brian] over or something." The trial court correctly held that it was a personal observation that did not require any specialized knowledge. The trial court did not abuse its discretion in the admission of any of the above challenged statements by lay witnesses in Commodore's trial. Thus, this issue has no merit.

CONCLUSION
¶ 39. For the foregoing reasons, we affirm the judgment of the DeSoto County Circuit Court.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT I, CONSPIRACY, AND SENTENCE OF FIVE YEARS AS A HABITUAL OFFENDER; COUNT II, BURGLARY OF A BUILDING OTHER THAN A DWELLING, AND SENTENCE OF SEVEN YEARS AS A HABITUAL OFFENDER; COUNT III, ATTEMPTED GRAND LARCENY, AND SENTENCE OF TEN YEARS AS A HABITUAL OFFENDER; AND COUNT V, ATTEMPTED AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS AS A HABITUAL OFFENDER, ALL TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, AND TO PAY RESTITUTION IN THE AMOUNT OF $100 TO THE CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Counts IV, VI, and VII of the indictment charged Commodore's co-defendant, Roosevelt Hill, with crimes arising out of these events. He does not join in this appeal.